**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF ILHAN OMAR'S WASHINGTON, D.C. RESIDENCE | ) No. |

**JUDICIAL WATCH, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION TO INTERVENE AND UNSEAL SEARCH WARRANT MATERIALS**

## I. Introduction.

Judicial Watch, Inc. respectfully requests that this Court allow it to intervene in this matter for the limited purpose of unsealing the judicial records related to the search warrant executed at Representative Ilhan Omar's Washington, D.C. home on October 12, 2026. Judicial Watch seeks the warrant, its application, all supporting affidavits and attachments, any return and inventory, the docket sheet, and all related briefs, motions, orders, opinions, and transcripts filed in this matter, including records concerning the scope of the search and the sealing of these materials (collectively, the "warrant materials"). These are judicial records subject to both the common-law presumption of public access and the public's First Amendment right of access.

The government has publicly acknowledged the search and investigation, Representative Omar has publicly challenged the government's actions and solicited campaign contributions in response, and news reports have described the warrant proceedings based on unnamed sources. The public has a substantial interest in examining the judicial records underlying these competing accounts, particularly when the government searches an elected official's Washington, D.C. residence before an election. The Court should expeditiously unseal the warrant materials, with any continued sealing confined to specifically justified portions of particular records.

## II. Factual Background.

On October 12, 2026, Homeland Security Investigations, a component of the Department of Homeland Security, executed a search warrant at Representative Ilhan Omar's Washington, D.C. residence. ABC News reported that the investigation concerned Representative Omar's immigration paperwork and that she had not been charged with a crime.[1]

Following the search, a Department of Justice spokesperson publicly confirmed that Homeland Security Investigations had executed a judicially authorized search warrant secured by the Department of Justice as part of an ongoing federal criminal investigation. White House official Tom Homan also publicly confirmed the search and stated that the Department of Justice was leading the investigation with the Department of Homeland Security.[2]

Representative Omar then publicly characterized the search as an effort to target political opponents through federal law enforcement.[3] Later on the day of the search, her campaign sent supporters a fundraising email with the subject line "DHS raided my house this morning." The email described the search as part of a "ludicrous, partisan investigation into my immigration status," tied it to the approaching election, and repeatedly asked supporters to make campaign contributions in response.[4]

---

1 Alexander Mallin et al., *Rep. Ilhan Omar's Residence Searched as Part of Ongoing Criminal Investigation, DOJ Says*, ABC News (Oct. 12, 2026), https://abcnews.com/US/rep-ilhan-omars-residence-searched-part-ongoing-criminal/story?id=137192001.

2 *Id.*

3 *Id.*

4 Ilhan for Congress, *DHS raided my house this morning* (Oct. 12, 2026), https://www.politicalemails.org/messages/2457258/html_body.

On October 14, 2026, CNN reported, citing people familiar with the investigation, that a D.C. magistrate judge had required additional precautions before permitting the search because Representative Omar is a member of Congress. CNN also reported that the White House had pressed for an aggressive search and that the Department of Justice sought documents concerning her immigration paperwork. The report described nonpublic exchanges between prosecutors and the Court based on unnamed sources.[5]

The search occurred approximately three weeks before the November 3, 2026 election, in which Representative Omar is seeking reelection. The warrant and related judicial records are currently sealed.

## III. Movant.

Judicial Watch is a not-for-profit educational organization that seeks to promote transparency, accountability, and integrity in government and fidelity to the rule of law. An integral part of Judicial Watch's mission is educating the public about the operations and activities of the government and government officials. To this end, Judicial Watch undertakes investigations of the federal government and federal officials by making extensive use of the Freedom of Information Act, among other investigative tools. Judicial Watch subsequently analyzes all records it receives and disseminates its findings to the public.

Judicial Watch's interest in allegations concerning Representative Omar predates the present search. On July 23, 2019, Judicial Watch filed an ethics complaint with the Office of Congressional Ethics requesting an investigation of allegations of perjury, immigration fraud,

---

[5] CNN News Central, Transcript (Oct. 14, 2026, 3:30 p.m. ET), https://prod.transcripts.cnn.com/show/cnc/date/2026-10-14/segment/12.

marriage fraud, state and federal tax fraud, and federal student loan fraud.[6] Obtaining and analyzing the warrant materials would further Judicial Watch's longstanding efforts to inform the public about these issues and the government's response.

Here, Judicial Watch seeks to advance its mission by informing the public about Representative Omar's conduct and the government's investigation. In addition, Judicial Watch has moved to unseal warrant materials related to the search of President Donald J. Trump's Mar-a-Lago residence and federal investigations of Rudolph Giuliani, Victoria Toensing, Michael Caputo, and Mike Lindell. *See, e.g.*, Mot., *United States v. Sealed Search Warrant*, No. 9:22-mj-08332-BER (S.D. Fla. Aug. 9, 2022) (moving to unseal the warrant materials relating to the search of President Donald J. Trump's Florida residence); *In re Search Warrants Executed on April 28, 2021*, No. 1:21-mc-425-JPO (S.D.N.Y. Oct. 8, 2026) (granting Judicial Watch's motion to unseal records related to search warrants executed on Giuliani and Toensing); *In re Search of 5807 Hillburne Way, Chevy Chase, MD 20815*, No. 8:21-mj-1202-GLS (D. Md. Sept. 22, 2026) (granting Judicial Watch's and Toensing's motion to unseal records related to the search of her home); Mot., *In re Search of Information Associated with Six Accounts Stored at Premises Controlled by One Provider Pursuant to 18 U.S.C. 2703 for Investigation of Violations of 18 U.S.C. 951*, No. 26-mc-98-JEB (D.D.C. June 22, 2026) (seeking to unseal search warrant materials related to the search of Michael Caputo's personal email account).

---

6 Judicial Watch, *Judicial Watch Files House Ethics Complaint against Rep. Ilhan Omar over Potential Immigration, Marriage, Tax, and Student Loan Fraud* (July 23, 2019), https://www.judicialwatch.org/judicial-watch-files-house-ethics-complaint-against-rep-ilhan-omar-over-potential-immigration-marriage-tax-and-student-loan-fraud/.

## IV. Argument.[7]

"The public's right of access to judicial records derives from two independent sources: the common law and the First Amendment." *In re L.A. Times Commc'ns LLC*, 628 F. Supp. 3d 55, 62 (D.D.C. 2022) (citations omitted).

### A. Judicial Watch has a common-law right to the warrant materials.

Search warrant materials, including the warrant application, supporting affidavits and attachments, related briefing, and the Court's orders, qualify as judicial records. *In re L.A. Times Commc'ns,* 28 F.4th 292, 296–97 (D.C. Cir. 2022) (holding that "search warrant materials" are judicial records because they are "intended to influence a judge's decisionmaking"). "The public's right of access to judicial records is a fundamental element of the rule of law." *In re Leopold to Unseal Certain Elec. Surveillance Applications & Ords.*, 964 F.3d 1121, 1123 (D.C. Cir. 2020). "At bottom, it reflects the antipathy of a democratic country to the notion of 'secret law,' inaccessible to those who are governed by that law." *Id.* A "strong presumption in favor of public access to judicial proceedings, including judicial records" therefore exists. *Id.* at 1127 (citation and internal quotation marks omitted).

When the government seeks to overcome this presumption and maintain a seal, courts in this Circuit apply the six-factor balancing test established in *United States v. Hubbard*, 650 F.2d 293 (D.C. Cir. 1980). "The *Hubbard* test has consistently served as our lodestar for evaluating motions to seal or unseal judicial records because it ensures that [courts] fully account for the

---

[7] Because the D.C. Circuit has recognized that "nonparties may permissively intervene for the purpose of challenging confidentiality orders," *EEOC v. Nat'l Children's Ctr., Inc.*, 146 F.3d 1042, 1045 (D.C. Cir. 1998), and that principle extends to orders sealing judicial records, Judicial Watch focuses this memorandum on the merits of its request to unseal the search warrant materials.

various public and private interests at stake." *Leopold*, 964 F.3d at 1127 (citation and internal quotation marks omitted); *see also MetLife, Inc. v. Fin. Stability Oversight Council*, 865 F.3d 661, 666 (D.C. Cir. 2017). "Under the *Hubbard* test, a seal may be maintained only if the district court, after considering the relevant facts and circumstances of the particular case, and after weighing the interests advanced by the parties in light of the public interest and the duty of the courts, concludes that justice so requires." *Leopold*, 964 F.3d at 1131 (citation and internal quotation marks omitted). The six *Hubbard* factors are: (1) the need for public access to the documents at issue; (2) the extent of previous public access to the documents; (3) the fact that someone has objected to disclosure, and the identity of that person; (4) the strength of any property and privacy interests asserted; (5) the possibility of prejudice to those opposing disclosure; and (6) the purposes for which the documents were introduced during the judicial proceedings. *Id.* (citation omitted).

The *Hubbard* factors support unsealing.

First, the public's need for access is substantial. The government has searched an elected official's home and has publicly acknowledged an ongoing criminal investigation, even to the point of commenting on its conduct. Representative Omar has disputed the government's account and used the search and those comments to solicit campaign contributions. News reports based on unnamed sources have added accounts of the Court's restrictions and the government's requests. The public has a legitimate interest in understanding the factual basis for the warrant and the government's exercise of its investigative authority. Access would enable the public to evaluate these competing accounts against the records submitted to and considered by the Court. The approaching election makes timely access particularly consequential; the

public's ability to assess official conduct should not depend solely on public statements and anonymous-source reporting.

Second, although the warrant materials themselves have not been publicly available, the government and Representative Omar have placed important facts about the search and investigation in the public domain. Those disclosures diminish the justification for sealing information already publicly acknowledged. To the extent this factor is neutral because the documents themselves have not previously been released, it does not displace the common-law presumption of access or the substantial public need identified above.

Third, any objection to disclosure should be evaluated in light of the objector's identity and the specific interests asserted. The government has publicly confirmed the investigation, and Representative Omar has publicly challenged the government's account and used the search to solicit contributions. That public discussion does not establish consent to unsealing, but it underscores the need to assess any objection to disclosure of particular records or portions of records. The Court should require an objector to explain why limited redactions would not adequately protect the asserted interests.

Fourth, any asserted privacy or property interests should be assessed in light of the information already made public and the contents of the particular records. Representative Omar's public response and fundraising diminish any interest in keeping the existence and publicly described subject of the search confidential. Those actions do not forfeit all privacy interests or the interests of witnesses and unrelated third parties. The Court should protect any legitimate remaining interests through limited redactions where practicable, rather than continued sealing of the entire record.

Fifth, the government must identify concrete prejudice that disclosure would cause to its investigation. The investigation became overt when the search was executed, which the government has publicly acknowledged. Continued secrecy concerning the existence of the search therefore serves little purpose. *See In re L.A. Times Commc'ns*, 28 F.4th at 295–96 (remanding district court's denial of media's access to search warrant materials, in part, where the government and the subject of the warrant both publicly confirmed an ongoing investigation); *see also In re Application of Politico LLC*, No. 23-5071, 2024 U.S. App. LEXIS 9886, at *10–12 (D.C. Cir. Apr. 23, 2024) (per curiam) (remanding order denying access to grand jury material in light of government's public disclosure of dispute before the grand jury). Particular records may contain sensitive investigative leads, methods, or witness information, but those concerns should be evaluated document by document and addressed through limited redactions where practicable. Any request for broader withholding should explain why redaction would not adequately protect the identified interests.

Sixth, the search warrant materials were introduced to obtain judicial authorization for a search and to establish its permissible scope. The application, supporting materials, and any related briefing and orders thus bear directly on the Court's exercise of judicial authority. Their role in the Court's decision strongly favors public access. *See In re L.A. Times Commc'ns,* 28 F.4th at 297. Disclosure would permit the public to understand the judicial basis for the search and any restrictions placed on it.

Taken together, the substantial need for public access and the central role of the warrant materials in judicial decisionmaking support prompt unsealing. The fact that an investigation remains ongoing does not resolve the common-law inquiry. Any continued sealing should rest on a particularized showing as to specific records or portions of records, with the balance

released promptly. If the Court concludes that some material must remain sealed, it should require the government to propose limited redactions and explain why each is necessary.

**B. The First Amendment provides an additional basis for access.**

The First Amendment independently requires that certain judicial proceedings be open to the public. To determine when this right applies, courts apply the "experience and logic" test, asking: (1) whether "there has been a tradition of accessibility" to the proceedings in question; and (2) whether public access would "play[] a particularly significant positive role in the actual functioning of the process." *Press-Enterprise Co. v. Superior Ct.*, 478 U.S. 1, 9–11 (1986) (*Press-Enterprise II*); *see also In re Application of N.Y. Times Co.*, 585 F. Supp. 2d 83, 89 n.8 (D.D.C. 2008) (noting that "the routine practice is to make warrant materials publicly available after a search has been executed and a return is available," although a party may move to seal the warrant after it is executed). The government may overcome this right only by demonstrating that "closure is essential to preserve higher values and is narrowly tailored to serve that interest." *Press-Enterprise II*, 478 U.S. at 13–14 (citation omitted).

Public access would play a significant positive role by permitting scrutiny of the Court's authorization of a search of an elected official's home and the limits imposed on that search. The public statements and reporting described above underscore the value of access to the actual judicial record. *See Wash. Post v. Robinson*, 935 F.2d 282, 292 (D.C. Cir. 1991) ("Because disclosure of the contents of the plea agreement would only have confirmed to the public what was already validated by an official source ... it could hardly have posed any additional threat to the ongoing criminal investigation."). If the First Amendment right attaches, continued sealing must be essential to preserve a higher value and narrowly tailored to serve that interest. *See Press-Enterprise II*, 478 U.S. at 13–14. The government should identify the specific harm

disclosure would cause and explain why limited redactions would be inadequate. Even if the Court declines to recognize a First Amendment right to some or all of these materials, it should independently apply the common-law presumption and the *Hubbard* factors.

## V. Conclusion.

For these reasons, Judicial Watch respectfully requests that the Court allow it to intervene for the limited purpose of seeking public access and promptly unseal the warrant materials relating to the search warrant executed at Representative Omar's Washington, D.C. home on October 12, 2026. If the Court determines that some information must remain sealed, Judicial Watch requests disclosure of the remaining materials with only specifically justified, limited redactions.

Dated: October 15, 2026

Respectfully submitted,

Sean O'Donnell (D.C. Bar No. 90040392)
Michael Bekesha (D.C. Bar No. 995749)
JUDICIAL WATCH, INC.
425 Third Street S.W., Suite 800
Washington, DC 20024
Tel: (202) 646-5172
Email: mbekesha@JudicialWatch.org

*Counsel for Judicial Watch, Inc.*