UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | |
|---|---|
| APPLICATION OF FOURTEEN PRESS ORGANIZATIONS FOR ACCESS TO SEALED SEARCH WARRANT RECORDS | Case No. 1:26-mc-00144 (JEB) |
| IN RE APPLICATION OF THE NEW YORK TIMES COMPANY IN THE MATTER OF REP. ILHAN OMAR INVESTIGATION | Case No. 1:26-mc-00145 (JEB) |
| IN THE MATTER OF THE SEARCH OF ILHAN OMAR'S WASHINGTON, D.C. RESIDENCE | Case No. 1:26-mc-00147 (JEB)<br>**REDACTED PUBLIC VERSION**<br>~~**FILED *EX PARTE* UNDER SEAL**~~ |

**THE UNITED STATES OF AMERICA'S CONSOLIDATED ~~*EX PARTE*~~ MEMORANDUM OF LAW IN OPPOSITION TO REQUESTS TO ACCESS SEALED SEARCH WARRANT RECORDS**

**TABLE OF CONTENTS**

INTRODUCTION ........................................................................................................ 1

BACKGROUND ........................................................................................................ 2

ARGUMENT ........................................................................................................ 12

I. There is no right of access to materials that reveal [redacted] .....................12

II. There is no First Amendment basis to unseal the Search Warrant Records right now.........13

A. The Applicants cannot satisfy the "experience" prong...............................................14

B. The Applicants cannot satisfy the "logic" prong. .......................................................16

C. Sealing is warranted even if a qualified right of access existed. ................................17

III. There is no common-law basis to immediately unseal the Search Warrant Records. ..........18

A. No presumption applies to partially executed warrants and related records. ..............18

B. The Search Warrant Records should be temporarily sealed under *Hubbard*..............21

IV. Applicants cite no authority supporting the broad and immediate relief they request. ........36

V. Temporary sealing is the only appropriate remedy at this time..........................................39

VI. The United States does not necessarily oppose later unsealing (with redactions)...............43

CONCLUSION ........................................................................................................ 45

## INTRODUCTION

Sixteen organizations (the "Applicants") recently covered the partial execution of a federal search warrant at the personal residence of Congresswoman Ilhan Nur Said Elmi a/k/a Ilhan Abdullahi Omar (the "Subject"). Now, shortly before a federal election, the Applicants ask the Court to source their future reporting by immediately unsealing everything tied to that warrant *before* it has been fully executed and *during* the underlying active federal criminal investigation. This request sounds rash because it is rash. The Court should reject it without prejudice for renewal after the search warrant has been fully executed and a charging decision is made public.

To be clear: the United States does not necessarily oppose unsealing some of these materials later (with proper redactions) so the public can see how the legal process played out. This Court is familiar with the legal contours and execution of such a proposal. "After [an] investigation yielded an indictment" of President Trump in 2023, the same four attorneys for most of the Applicants tried to unseal documents associated with a search warrant for records linked to President Trump's Twitter account. *In re Press Application for Access to Jud. Recs. in Case No. 23-SC-31* ("*In re Press Application*"), 704 F. Supp. 3d 161, 165-66 (D.D.C. 2023). "[L]arge swaths of these proceedings" were then "unsealed with the Government's consent" and redactions. *Id.* at 166. The Court denied what was left of the Applicants' request to disclose documents that were still "under lock and key," and the Applicants accepted that result without appeal. *Id.*

At the right time, the Court should do the same here. But critical differences in the two cases' postures show why the request is premature: the documents in *In re Press Application* were unsealed only *after* the United States fully executed the warrant and made a charging decision. Here, the press is trying to unseal materials about a search warrant mid-execution within an active criminal investigation [redacted]—all *before* a charging decision has

been reached and publicly announced. Unsealing everything now [redacted] imperils the investigation, and publicly exposes suspected criminal wrongdoing against which [redacted] may yet mount a defense in court.

The United States has not found a single case where such relief has been ordered, and based on their papers, neither have the Applicants. That is because there is no legal justification for such an order under either the First Amendment or common law. Even under ordinary circumstances, the First Amendment's "experience and logic" test does not entitle the public to access a search warrant affidavit and related materials before prosecutors make a charging decision. The particular circumstances of this case offer further reasons not to immediately unseal. Nor does the common law get the Applicants any further. On balance, the *Hubbard* factors—especially the privacy-interest and governmental-prejudice factors—weigh decisively in favor of sealing for now.

If, however, the Court believes unsealing is appropriate, the United States respectfully requests it state its reasons in an order and set a future unsealing date and time that gives the United States enough time to both file, and the Court to resolve, an emergency motion to stay that order pending appeal, if authorized by the Solicitor General, and potentially a similar motion with the D.C. Circuit. D.C. Cir. Rule 8(a)(1)(A).

**BACKGROUND**

On [redacted], Magistrate Judge [redacted] signed a warrant to search the premises known as [redacted] (the "Target Location") [redacted] The following details provide context for [redacted] the issuance of that warrant and the events marking its ongoing execution to date (the "Search Warrant Records").

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

**3. The warrant's execution starts on October 12, 2026, and is still ongoing.**

Around 6:05 a.m. on October 12, 2026, agents from HSI reached the Target Residence, signed warrant in hand. [redacted]

[redacted]

[redacted]

[redacted]

**4. The Applicants ask to unseal the Search Warrant Records three days into the warrant's execution and nineteen days before the Subject's election.**

On October 15, the Applicants applied to unseal the Search Warrant Records. *See* Case Nos. 1:26-mc-00144 (14 press organizations), 1:26-mc-00145 (New York Times), 1:26-mc-00147

[redacted]

(Judicial Watch, Inc.). Each application asks for the same relief (unsealing all the materials immediately) on the same grounds (First Amendment and common-law right of access).

That same day, the Court set an October 22 deadline for the United States' response to the first two applications filed. And on October 19, it set a November 9 deadline to respond to Judicial Watch's application. *See generally* Minute Orders. On October 21, the United States filed a motion and sealed supporting memorandum seeking an extension of time to respond to all three Applications until after the search warrant has been fully executed, or, in the alternative, until the Court's November 9 Judicial Watch application deadline. On October 22, the Court granted the motion in part and gave the United States until October 27 to respond to the first two applications.

**5. Reporting surges following the partial execution of the warrant.**

Members of the press arrived on scene not long after HSI agents started executing the warrant at the Target Location. The news has since been filled with stories and speculation about the search and its implications within the larger investigation, often based on statements from unnamed sources. *See, e.g.*, Leland Vittert, *Federal agents searched Omar's trash for DNA before raid: Sources*, THE HILL (Oct. 16, 2026), https://tinyurl.com/282jc29c (referring to unnamed "sources"); Peter D'Abrosca, *Ilhan Omar's sister questioned by feds after dramatic DC home raid*, FOX NEWS (Oct. 20, 2026), https://tinyurl.com/86yuxmcx (same).

In contrast, the Justice Department has publicly offered several circumspect comments about the search warrant and the larger investigation. *See, e.g.*, Alanna Durkin Richer & Eric Tucker, *Agents search Rep. Omar's Washington home in criminal probe as she vows she won't 'be silenced'*, AP NEWS (Oct. 13, 2026), https://tinyurl.com/mrx3vbmh (citing a Department statement "that HSI agents had executed a judicially authorized search warrant in the Washington, D.C., area related to an ongoing federal criminal investigation but provided no other details"); Sarah N. Lynch, *Attorneys for Rep. Ilhan Omar accuse DOJ of violating judge's orders to follow*

*protocols to protect her rights as member of Congress*, CBS NEWS (Oct. 17, 2026), https://tinyurl.com/2vyezumv (quoting a Department statement that a leaked letter sent by the Subject's attorneys to the Department was "riddled with false allegations and inaccuracies," that Department "attorneys and law enforcement partners complied with all court orders and legal obligations, as they always do," and that "[l]eaking a letter to the press right after sending it is not good faith. It is a publicity play."); The Story, *DOJ official says department is following a 'web of information' on Ilhan Omar*, FOX NEWS (Oct. 23, 2026), https://tinyurl.com/2vuj47bd ("I don't want to say too much beyond that, … we don't want to compromise the investigation."); Jesse Watters Primetime, *Jeanine Pirro confirms Ilhan Omar's real name is Ilhan Nur Said Elmi*, FOX NEWS (Oct. 22, 2026), https://tinyurl.com/46c9yasv; Forbes Breaking News, *AG Todd Blanche Asked About Ilhan Omar Probe: 'Is The End Game To Move To Denaturalize Her?'* (YouTube, Oct. 22, 2026), https://tinyurl.com/3mhszaku ("There's no 'endgame.' It's an investigation … I don't think it's fair to [the Subject] or to the Department of Justice or to [the Department of Homeland Security] to have an 'endgame' during … what's now been publicly disclosed as a criminal investigation.").

The Subject's several statements have revealed basically no details about the Search Warrant Records. *See, e.g.*, Richer & Tucker, *supra* (describing a post on X calling the search "attempt to target political enemies and weaponize federal law enforcement"); Press Release, Office of Congresswoman Ilhan Omar, *Office of Rep. Ilhan Omar Statement on DHS Raid* (Oct. 12, 2026), https://tinyurl.com/4cbxc2hw (similar); Video posted by the Subject (@ilhanmn), TikTok (Oct. 21, 2026), https://tinyurl.com/d9xmsfb3 (stating that "it is going to be a very expensive and challenging time"); Ilhan for Congress, *DHS raided my house this morning* (Oct. 12, 2026), https://tinyurl.com/ypackbhk (asking for contributions "to help [her] fight back in the

face of Trump's abuse of power"). Just days ago, the Subject gave a primetime interview about the situation. *See* All In with Chris Hayes, *FULL INTERVIEW: Rep. Ilhan Omar sits down with Chris Hayes after raid on her house*, MS NOW (Oct. 21, 2016), https://tinyurl.com/44b2k89r (saying she received and read a privilege waiver form and warrant).

## ARGUMENT

Neither the First Amendment nor the common law requires unsealing the Search Warrant Records mid-execution and mid-investigation. That said, the United States expects that the warrant will be fully executed in short order [redacted] Once those two benchmarks pass, the United States will not necessarily oppose unsealing at least some of the Search Warrant Records (with redactions) with the sorts of process and limitations this Court has ordered in similar cases. The Court thus should deny the Applications without prejudice and order the Department to file status reports on the warrant's ongoing execution.

### I. There is no right of access to materials that reveal [redacted].

[redacted]

[redacted]

**II. There is no First Amendment basis to unseal the Search Warrant Records right now.**

As it did in 2023, this Court should hold that the Applicants have no First Amendment right to immediate unsealing of the Search Warrant Records. The First Amendment "requires courts to make criminal proceedings open and available to the public under certain circumstances." *In re Press Application*, 704 F. Supp. 3d at 173. To determine whether such circumstances are present, "courts consider the two factors known as the 'experience and logic' test: (1) whether 'there has been a tradition of accessibility' to the proceedings in question; and (2) whether public access would 'play[] a particularly significant positive role in the actual functioning of the process.'" *Id.* (quoting *Press-Enterprise Co. v. Superior Ct. of Cal. for Riverside Cnty.* ("*Press-Enterprise II*"), 478 U.S. 1, 9-11 (1986)). If the proceeding at issue passes the "experience and logic" test, "a qualified First Amendment right of public access attaches." *Press-Enterprise II*, 478

U.S. at 9. But even if that occurs, "the Government can overcome it only by showing that 'closure is essential to preserve higher values and is narrowly tailored to serve that interest.'" *In re Press Application*, 704 F. Supp. 3d at 173 (quoting *Press-Enterprise II*, 478 U.S. at 13-14). In the same way and for the same reasons the Court gave in 2023, "neither factor in the *Press-Enterprise II* test indicates that there is a First Amendment right of access to the[] warrant materials" that the Applicants seek here. *Id.* at 175. Moreover, even if they did indicate as much, keeping the Search Warrant Records under temporary seal "is a justified and narrowly tailored course of action." *Id.*

**A. The Applicants cannot satisfy the "experience" prong.**

As this Court has explained, "[t]he historical practice is somewhat muddled, but it suggests that the First Amendment does not open search warrants and related documents to public examination when," as here, "an investigation is ongoing." *In re Press Application*, 704 F. Supp. 3d at 174. "Search-warrant applications traditionally have been filed *ex parte* and thus out of the public's view." *Id.* "And while executed warrants 'are routinely filed with the clerk of court without seal,' that does not necessarily bespeak a 'history of unrestricted access.'" *Id.* (quoting *In re Search Warrant for Secretarial Area Outside Off. of Gunn*, 855 F.2d 569, 573 (8th Cir. 1988), and *Times Mirror Co. v. United States*, 873 F.2d 1210, 1214 (9th Cir. 1989)). "When it comes to an active investigation, the Government 'has always been able to restrict access to warrant materials by requesting a sealing order, which courts have granted freely upon a showing that a given criminal investigation requires secrecy.'" *Id.* (quoting *Times Mirror*, 873 F.2d at 1214); *see also id.* (citing *In re Search of Fair Finance*, 692 F.3d 424, 430 (6th Cir. 2012) (performing an extensive analysis and "find[ing] no evidence ... of documents filed in search warrant proceedings historically being made open to the press and public" after the search is executed); *Baltimore Sun Co. v. Goetz*, 886 F.2d 60, 64 (4th Cir. 1989) ("[P]roceedings for the issuance of search warrants are not open."); *United States v. All Funds on Deposit at Wells Fargo*, 643 F. Supp. 2d 577, 583

(S.D.N.Y. 2009) ("Warrant application proceedings are highly secret in nature and have historically been closed to the press and public.")); *accord United States v. Certain Real Prop. Located in Romulus*, 977 F. Supp. 833, 835 (E.D. Mich. 1997) (adopting "the reasoning of the Second, Fourth and Ninth Circuits" and declining "to extend the first amendment right of public access to search warrants and the affidavits supporting them"). "The option of secrecy to protect an investigation is a hallmark of search-warrant proceedings." *In re Press Application*, 704 F. Supp. 3d at 174.

As in 2023, the Applicants offer no "arguments to overcome this history"—nor do they address *In re Press Application*. *Id.* Within the 11 pages of First Amendment arguments across all three applications, *In re Press Application* goes unmentioned. *But see* Case No. 1:26-mc-00145, Application, at 11 (making a passing reference to it in the common law argument). That is no surprise. The Applicants' litigation position here is even weaker than their 2023 position. There, an indictment already had been issued, but the government nevertheless indicated "that its investigation into 2020 election interference continues." *In re Press Application*, 704 F. Supp. 3d at 174. That representation was enough for the Court to deem that no First Amendment right attached and decline to infuse any sort of common-law right of access with the sort of dispositive power that could "outweigh the clearly limited historical access outlined above." *Id.*

Given that the instant warrant is part of an ongoing investigation that has yet to even yield a public charging decision, "[e]xperience is therefore" even more "against the [Applicants]" now than it was in 2023. *Id.*; *see also* Robert J. Brantman & Scott K. Martinsen, Times Mirror Co. v. United States *and A Qualified First Amendment Right of Public Access to Search Warrant Proceedings and Supporting Affidavits*, 65 NOTRE DAME L. REV. 781, 800 (1990) (reviewing history of search warrants and finding no "historical traditions of openness").

**B. The Applicants cannot satisfy the "logic" prong.**

Even if the Applicants' request could survive the "experience" prong, the "logic" prong would stop them in their tracks. *See* Brantman & Martinsen, *supra*, at 802 (search warrant materials fail both prongs because "[t]he evidence does not reveal a 'historical tradition of openness,'" and "the interests in favor of access do not significantly outweigh the burdens of access"). *In re Press Application* explains why: "In light of the law-enforcement interests at stake, disclosing warrant materials mid-investigation would not position the public to play a 'significant positive role in the functioning' of the proceeding." 704 F. Supp. 3d at 174 (quoting *Times Mirror Co.*, 873 F.2d at 1214-15). "To be sure, public participation might work certain salutary effects on the warrant process, just as public access 'may operate as a curb on prosecutorial or judicial misconduct' in other criminal proceedings." *Id.* (quoting *Gunn*, 855 F.2d at 573). "Still, those effects are dwarfed by 'the damage to the criminal investigatory process that could result from open warrant proceedings.'" *Id.* at 174-75 (quoting *Times Mirror Co.*, 873 F.2d at 1215); *see id.* (quoting *In re New York Times Co.*, 585 F. Supp. 2d 83, 90 (D.D.C. 2008) (warrant "openness plays a significant positive role in the … criminal justice system, at least at the post-investigation stage")).

Examples of such damage abound, all of which are directly and immediately applicable here: "[R]evealing the subjects of an investigation and the Government's information sources mid-investigation could result in flight, evidence destruction, or other forms of obstruction." *Id.* at 175. [redacted] And the "potential for serious harm does not" go away at "the first indictment's return"; post-indictment sealing is "necessary" when "the affidavit may describe continuing investigations, disclose information gleaned from" sensitive sources, "or reveal the identity of informers." *In re Press Application*, 704 F. Supp. 3d at 175 (citation modified). [redacted]

Neither *Press-Enterprise II* factor "indicates that there is a First Amendment right of access to these warrant materials" the Applicants ask the Court to immediately unseal. *Id.*; *see also Comput. Pros. for Soc. Resp. v. Secret Serv.*, 1993 WL 20050, at *1 (D.C. Cir. Jan. 5, 1993) (finding "no clear tradition of public access to search warrant materials related to an ongoing investigation" in the FOIA context); Emily S. Shah, *Illuminating Surveillance: Updating Rights of Access for Electronic Searches*, 37 HARV. J.L. & TECH. 215, 233 (2023) ("Today, most circuits do not apply the First Amendment right of access to search warrants.").

**C. Sealing is warranted even if a qualified right of access existed.**

"Even accepting for the sake of argument that a qualified right of access existed, the [Applicants'] First Amendment argument would fall short." *In re Press Application*, 704 F. Supp. 3d at 175. As this Court recognized, even the lone federal circuit to recognize a qualified right at all "noted that the 'recognition of a qualified First Amendment right of access does not mean that the sealed materials must automatically be disclosed.'" *Id.* (citation modified) (quoting *Gunn*, 855 F.2d at 574); *see generally Elec. Frontier Found. v. Superior Ct.*, 299 Cal. Rptr. 3d 480, 495 (Cal. Ct. App. 2022) (describing *Gunn* as an "outlier" that "conflicts with every federal circuit court and all but one state court of last resort that has considered whether there is a First Amendment right to search warrant materials," and "join[ing] the overwhelming majority of state and federal courts [that] decline to follow *Gunn*"); *see also* Shah, *supra*, at 233 (stating that litigants everywhere "struggle to establish a historical tradition of openness and that the importance of public access outweighs the government's secrecy interests"). As explained below, the details about the ongoing investigation here more than satisfy the United States' burden to show a compelling interest in keeping the Search Warrant Records sealed at this time, and "the extensive redactions necessary to protect its investigation" right now "would render the documents of little meaning or value to

the public." *In re Press Application*, 704 F. Supp. 3d at 175. Thus, "sealing the documents entirely is a justified and narrowly tailored course of action" at this time. *Id.*

**III. There is no common-law basis to immediately unseal the Search Warrant Records.**

A common-law right of access attaches to "judicial records"—that is, "documents intended to influence a judge's decisionmaking." *In re Los Angeles Times Commc'ns LLC*, 28 F.4th 292, 297 (D.C. Cir. 2022) (citation modified). For purposes of this Response, the United States agrees that the Search Warrant Records are "judicial records." There is a presumption that the public will be able to access judicial records. *See United States v. Hubbard*, 650 F.2d 293 (D.C. Cir. 1980).

Here, the United States overcomes that presumption in two ways:

**A. No presumption applies to partially executed warrants and related records.**

The *presumption* of open access categorically should not apply to search warrant records when, as here, the warrant is only partially executed. A presumption of access to search warrant records "prior to the execution of search warrants" appears to "have been foreclosed squarely by" Supreme Court cases like *Franks v. Delaware*, 438 U.S. 154 (1977). *Media Gen. Operations, Inc. v. Buchanan*, 417 F.3d 424, 429 (4th Cir. 2005). Cases like *Buchanan* and *United States v. Leeper*, 187 F.4th 11, 25 (2d Cir. 2026) (echoing *Buchanan*), understand *Franks*'s command that search warrant proceedings be *ex parte* to prohibit pre-execution access to search warrants—meaning there is no common-law presumption of access before law enforcement has finished executing a warrant. *See, e.g.*, Michael D. Johnson & Anne E. Gardner, *Access to Search Warrant Materials: Balancing Competing Interests Pre-Indictment*, 25 U. ARK. LITTLE ROCK L. REV. 771, 813 (2003). Take two cases from this district that the New York Times cites to argue that the presumption applies: *In re NY Times*, 585 F. Supp. 2d 83, 89 n.8 (D.D.C. 2008) (emphasis added), as saying "the routine practice is to make warrant materials publicly available *after a search has been executed* and a return is available," and *In re Application of WP Co.*, 201 F. Supp. 3d. 109, 121

(D.D.C. 2016) (emphasis added), as saying that "warrant applications *and receipts* are routinely filed with the clerk of court without seal." NYT Br. at 10. Both cases contemplate routine access *after* execution and the filing of returns. That makes sense because "there is a fundamental difference between search warrants at the warrant proceeding stage and search warrants at the post-execution stage. At the warrant proceeding, the state's interest in secrecy is much more significant." Peter G. Blumberg, *Sunshine and Ill Wind: The Forecast for Public Access to Sealed Search Warrants*, 41 DEPAUL L. REV. 431, 463 (1992).

This Court is not alone in appearing to peg a presumption of access to a warrant's completed execution. In *In re Search of Off. Suites for World & Islam Stud. Enter.*, 925 F. Supp. 738, 741 (M.D. Fla. 1996) (emphasis added), the court said the most permissive view on access to judicial records is that there is "a right of access *once the warrant has been executed*." *Cf.* Lynn B. Oberlander, *A First Amendment Right of Access to Affidavits in Support of Search Warrants*, 90 COLUM. L. REV. 2216, 2234 (1990) (pointing to evidence from the 1700s and 1800s to say that historically warrants were reviewable, at the earliest, "after execution"). Until now, even the most aggressive public-access asks have been "at the post-execution, pre-indictment stage"—never mid-execution. Blumberg, *supra*, at 433. Because no presumption attaches, the Ninth Circuit held that if a party seeks access to a document that "traditionally had been kept confidential"—like presentence reports or mid-execution search warrant records—they do so only if "*the party seeking access*" makes a certain showing justifying that disclosure. *Times Mirror*, 873 F.2d at 1219 (emphasis added) (saying there might not even be a common law "right of access" to search warrants pre-indictment because they've "traditionally been kept secret for important policy reasons"). The Seventh and Tenth circuits agree and limit the presumption for certain classes of

materials, including search warrant records. *See Matter of Search of 1638 E. 2nd St.*, 993 F.2d 773, 775 (10th Cir. 1993); *United States v. Corbitt*, 879 F.2d 224, 228 (7th Cir. 1989).

Courts and scholars appear to think a brightline rule is necessary to properly "ensur[e] that a warrant is successfully executed." *Forbes Media LLC v. United States*, No. 21-mc-80017, 2021 WL 3674516, at *14 (N.D. Cal. Apr. 26, 2021), *report and recommendation adopted*, 548 F. Supp. 3d 872 (N.D. Cal. 2021). "[I]t takes little imagination to recognize that there are some kinds of government operations that would be totally frustrated if conducted openly," and an extended search warrant execution is one of them. *Press-Enterprise II*, 478 U.S. at 8-9. Allowing public access mid-stream would work a multitude of harms, including giving potential defendants an opportunity to move, tamper with, or destroy evidence; affording potential witnesses the opportunity to align or change stories; and endangering law enforcement, among others. *See, e.g.*, *Franks*, 438 U.S. at 169; *Buchanan*, 417 F.3d at 429. On balance, "public involvement" would not "benefit the search warrant process." Jeffrey L. Levy, *An Ill Wind Blows: Restricting the Public's Right of Access to Search Warrant Affidavits*, 74 MINN. L. REV. 661, 688 n.111 (1990). "On the contrary, logic dictates that it could do great harm to the criminal justice system" for the reasons given above. *Id.* *Hubbard* itself offered search warrants as an example of withholding from public access "to protect the secrecy of an ongoing criminal investigation." 650 F.2d at 316 n.84.

The moving parties in these public-access cases traditionally have accepted this reality by "agree[ing that] public access to search warrant documents prior to the execution of a search would harm criminal investigations." *Fair Finance*, 692 F.3d at 432. Elsewhere, those parties—including media outlets—have explicitly disclaimed the Applicants' position here. *See Buchanan*, 417 F.3d at 429 ("[P]etitioners now concede that they have no right to view or object to sealing orders prior to the execution of search warrants."); *Baltimore Sun Co.*, 886 F.2d at 64 ("The Sun disclaims any

right to examine a search warrant affidavit before the warrant is executed.”). And with good reason: history and common sense tell us there is no “common law” right to the sort of mid-execution “premature disclosure” the Applicants seek. *Buchanan*, 417 F.3d at 429; *see also First Amendment right of access to judicial records*, 6 Crim. Proc. § 23.4(b) (5th ed. Nov. 2025 update) (indicating that “media organizations” have never made the claim that they may access Search Warrant Records “contemporaneous” with the warrant’s execution).

In short, the Court should conclude that there is no presumption to open access to a partially executed search warrant and that the Applicants bear the burden of justifying disclosure. That rule would apply here because, as outlined above, the United States has still only partially executed the search warrant [redacted]

**B. The Search Warrant Records should be temporarily sealed under *Hubbard*.**

Even if the presumption of access does apply to Search Warrant Records mid-execution, the United States can overcome that presumption here. In *Hubbard*, 650 F.2d at 315-16, the Court fashioned six factors to decide whether “records of court proceedings” must be sealed to protect certain interests: “(1) the need for public access to the documents at issue; (2) the extent of previous public access to the documents; (3) the fact that someone has objected to disclosure, and the identity of that person; (4) the strength of any property and privacy interests asserted; (5) the possibility of prejudice to those opposing disclosure; and (6) the purposes for which the documents

were introduced during the judicial proceedings." *E.E.O.C. v. Nat'l Children's Ctr., Inc.*, 98 F.3d 1406, 1409 (D.C. Cir. 1996). On balance, these factors weigh in favor of temporary sealing:

**1. The need for public access favors disclosure.**

This factor weighs in favor of disclosure. The United States agrees that in cases where the government is a party, public attention and oversight can ensure the government is not abusing its power; and that the public has an interest in ensuring the integrity of their election officials—especially on the eve of an election. NYT Br. at 2-3. But these interests do not end the discussion. *See, e.g.*, *WP Co.*, 201 F. Supp. 3d at 114 (listing same interests yet denying press access). The public "has an equally valid interest in non-disclosure to enable investigation by law enforcement, to aid the successful prosecution of wrongdoers, to protect the privacy of individuals named in search warrant documents, and to prevent the spread of rumors based on preliminary information." Johnson & Gardner, *supra*, at 782-83; *In re Sealed Search Warrants Issued June 4 & 5, 2008*, No. 08-m-208, 2008 WL 5667021, at *4 (N.D.N.Y. July 14, 2008) ("At this stage, the public has at least as great an interest in preserving the integrity and security of criminal investigations as in obtaining access to judicial documents."). When a "large and complex" "investigation is still in progress" and no one has been indicted, sealing serves key public interests: "knowing the facts produced by an uncompromised investigation"; [redacted]; and "fairness to any innocent persons … the documents" link to the case. *Gunn*, 855 F.2d at 575 (8th Cir. 1988) (Bowman, J., concurring).

These public interests all apply here. [redacted] *See In re Macon Tel. Pub. Co.*, 900 F. Supp. 489, 493 (M.D. Ga. 1995) (echoing Judge Bowman's articulation of public interest in

sealing). In addition to this "interest in effective governmental law enforcement," the public also has interests in preventing the Applicants here from "abus[ing] access rights by using the information they receive to" indulge in "public scandal." Blumberg, *supra*, at 454. "The court of public opinion is not the place to seek to prove" allegations in an affidavit. *United States v. Ferle*, 563 F. Supp. 252, 254 (D.R.I. 1983). "[M]inimiz[ing] the danger of an unfair trial by adverse publicity" is precisely one of the reasons *Hubbard* found justifies long-term sealing. *Hubbard*, 650 F.2d at 316 (quoting *Nixon v. Warner Commc'ns., Inc.*, 435 U.S. 589, 597-98 (1977)).

[redacted] That is just not the case here, where any other detail comes from speculation, conjecture, or anonymous sources.

For these reasons, this factor weighs only modestly in favor of unsealing right now.

The need for public oversight of the Executive Branch in a newsworthy case of historic significance does not change that. *Contra* NYT Br. at 11. The United States agrees that the public need for records in a case like this is greater than average. *See In re Press Application*, 704 F.

Supp. 3d at 170. The United States therefore agrees that, at some point, unsealing (with redactions) will be not just appropriate but desirable. *WP Co.*, 201 F. Supp. 3d 130 (unsealing "would also help explain and perhaps vindicate USAO decisions that have come under intense public scrutiny"). But remember: the Applicants do not ask for redacted documents at some point a few or several months on—they demand the Search Warrant Records *now*. There is no reason they need the records for oversight right now. A delay of [redacted] will not hinder the public's oversight role—[redacted]

Finally, the Applicants make much of an unwritten policy regarding Department actions taken shortly before an election. *See, e.g.*, NYT Br. at 12-13. Those arguments are weak. As the Attorney General recently explained, this so-called rule is "not part of the Justice Manual." DOJ, *Attorney General, FBI Director Announce Significant Law Enforcement Action*, YouTube, at 11:06-11:25 (Oct. 22, 2026), https://tinyurl.com/df28r54b. While the Department sometimes follows this "practice," it may take law-enforcement actions within 60 days of an election as long as "the purpose is proper." *Id.* at 17:33-17:50. Thus, contrary to the Applicants' accusations, this warrant does not violate the Manual. Because the timing could raise "the perception of an issue," the prosecution team consulted with the Public Integrity Section and received approval from the Attorney General before executing the warrant. Justice Manual 9-85.500. It was confirmed that the warrant's timing did not have "the purpose of affecting any election" or "of giving an advantage or disadvantage to any candidate or political party." *Id.*

**2. The extent of previous access favors temporary sealing.**

This factor supports nondisclosure. The Applicants argue that "the sum and substance of the [Search Warrant Records] has been in the public domain for some time." *Vanda Pharms.*, 539 F. Supp. 3d at 54. But "[t]o put it mildly, this is an overstatement." *Id.* The public has had zero access to any of the Search Warrant Records. The *entire* case remains under seal. True, the United

States has publicly confirmed that there was a judicially authorized search as part of a larger investigation, and the Subject has said she saw a warrant and return. But the mere knowledge that these judicial records exist does *not* introduce "much of" the documents' "critical information" into the "public forum." *Contra* NYT Br. at 12 (quoting *In re N.Y. Times*, 585 F. Supp. 2d at 92). [redacted]

In other contexts, the D.C. Circuit has sharply differentiated between the existence of an investigation and its details. In *Citizens for Resp. & Ethics in Washington v. Dep't of Justice* ("*CREW*"), 746 F.3d 1082, 1087 (D.C. Cir. 2014), after former Majority Leader Tom DeLay publicly announced that the DOJ wasn't bringing "criminal charges against him related to the Abramoff scandal," a watchdog filed a FOIA request seeking information about that decision. The court explained that while "DeLay's action lessened his interest in keeping secret the *fact* that he was under investigation, he retained a second, distinct privacy interest in the *contents* of the investigative files." *Id.* at 1092 (emphasis added). The D.C. Circuit said the same in *Kimberlin v. Dep't of Justice*, 139 F.3d 944, 949 (D.C. Cir. 1998), where it held that a prosecutor publicly "acknowledging the investigation and making a vague reference to its conclusion" did not "waive all his interest in keeping the contents of the OPR file confidential." So too in the criminal context.

*See WP Co.*, 201 F. Supp. 3d at 130 (the investigation, versus "the investigative information giving rise to the sealed materials," is an "important distinction"). These principles apply strongly here, where the United States and Subject have publicly confirmed the search warrant, but have said nothing about the *contents* of the Search Warrant Records. *See id.* at 123 (using FOIA cases, including *CREW*, in public-access analysis). In *WP Co.*, this district court contrasted a request to unseal information confirming the search with a request for "'applications, supporting affidavits, court orders, and returns' associated with any such warrants." 201 F. Supp. 3d at 126. The requests, it said, are qualitatively different: knowing a search occurred or even having the "warrant itself conveys relatively few details regarding an alleged crime," while search warrant records "include detailed information regarding the government's basis" for its investigation and search. *Id.*

This silence by the United States and the Subject about the details means the Applicants know little. Consider their own summary of what they know: After a back and forth about the Clause, a search warrant was executed to discover potential evidence of an immigration-crime conspiracy, including making a false statement. NYT Br. at 12. That is not much. Of course, additional speculation has run wild, and the Applicants have cited several anonymous sources to report facts of varying veracity. But at bottom, all they really have is the "existence" of the search warrant—a fundamentally "distinct question from disclosure of the *content* of the [underlying] records." *McMichael v. Dep't of Def.*, 910 F. Supp. 2d 47, 52 (D.D.C. 2012). And to the extent the Applicants rely on the unauthorized disclosure or leaks of investigative details, the Court should reject the "troubling suggestion that unauthorized disclosures from law enforcement agents or [others] have the effect of extinguishing the privacy, reputational, and due process interests of uncharged third parties." *WP Co.*, 201 F. Supp. 3d at 130. This factor supports nondisclosure.

**3. Objections to date favors temporary sealing.**

The United States' "opposition to unsealing … adds slightly to the case for nondisclosure." *In re Press Application*, 704 F. Supp. 3d at 171.

**4. The relevant privacy interests favor temporary sealing.**

There are extensive privacy or privacy-related interests at stake—[redacted]. First, "protecting law enforcement from 'being harassed and intimidated' mid-investigation is important." *In re Press Application*, 704 F. Supp. 3d at 171 (quoting *In re Sealed Search Warrant*, 622 F. Supp. 3d 1257, 1263 (S.D. Fla. 2022)). Here, "[t]he investigating law-enforcement officers … must be kept anonymous to allow the Government to proceed unhampered in its investigative efforts." *Id.*

Second, the Affidavit is chock full of privacy interests. [redacted]

[redacted]

[redacted]

[redacted]

Privacy interests apply to all materials that "reveal the intimate details of individual lives, [redacted] All of this is precisely the sort of intensely private and intimate details that *Hubbard* contemplated keeping out of the public eye. "On top of all that, the media spotlight trained on the instant investigation heightens" these privacy concerns. *In re Press Application*, 704 F. Supp. 3d at 171.

The Applicants may respond that some of the Affidavit's details are already publicly known—[redacted] While reporting of some of the facts may somewhat "diminish[]" the individuals' privacy interests, it doesn't "eliminate[]" them. *Elec. Priv. Info. Ctr. v. Dep't of Justice*, 18 F.4th 712, 720 (D.C. Cir. 2021); *see also In re Press Application*, 704 F. Supp. 3d at 172 (saying "[a]ttenuation of privacy rights ... does not equate with extinguishment of those

rights") (quoting *L.A. Times*, 628 F. Supp. 3d at 68)). All the Affidavit's "new facts that would be stigmatizing" generate "a significant privacy interest" here. *Elec. Priv. Info. Ctr.*, 18 F.4th at 720.

In short, the Search Warrant Records implicate "substantial privacy and reputational interests" of [redacted] *WP Co.*, 201 F. Supp. 3d at 123. This strongly "militates in favor of sealing under the fourth *Hubbard* factor." *In re Press Application*, 704 F. Supp. 3d at 171; *see also Application of Newsday, Inc.*, 895 F.2d 74, 79 (2d Cir. 1990).

**5. Prejudice to the ongoing investigation favors temporary sealing.**

This "is the weightiest factor in this case." *In re Press Application*, 704 F. Supp. 3d at 172. Today, the "investigation of [the Subject and] other individuals continues." *Id.* (citation modified). The United States therefore "hopes to keep private details about the government's investigative methods, including the precise information it sought" with the Warrant; a host of [redacted]; and the United States' "internal procedures for" securing and executing a warrant. *Id.* (citation modified). [redacted] That this investigation is ongoing is crucial: "the procedural posture of the government's criminal investigation must be considered in the balancing process and … the

[redacted]

The Applicants dismiss these interests as "typical concerns about protecting an ongoing investigation." NYT Br. at 13. That these interests recur often does not negate their importance.

Nor did the United States forfeit investigative interests when "Vice President Vance announced the investigation on a podcast" in March 2026. *Id.* In *In re Press Application*, the Court rejected a similar but far stronger claim. There, an applicant argued sealing was not necessary because the President had been indicted and arraigned—meaning "witnesses and subjects have been alerted to how they fit within the investigation and prosecution." *In re Press Application*, 704 F. Supp. 3d at 172. "On the contrary," the Court said, "the need for secrecy remains heightened even after an indictment has been issued, as long as the investigation is ongoing." *Id.* (citation modified).

If secrecy interests are controlling even once a case is indicted, [redacted] Consider the language this district court used in *In re N.Y. Times*, which the Applicants repeatedly cite: "openness plays a significant positive role in the functioning of the criminal justice system, *at least at the post-investigation stage*." 585 F. Supp. 2d at 90 (emphasis added). This division was intentional. Access should be given, that judge said, only once "the investigation is complete and therefore is not in danger of being thwarted if the Court releases the documents." *Id.* at 93; *see also id.* at 94 ("right to access warrant materials after an investigation has concluded"); *see also WP Co.*, 201 F. Supp. 3d at 129

(limiting common law access to “search warrant materials” in “concluded” investigations). [redacted]

The D.C. Circuit has signaled much the same, holding that even after an initial indictment the United States “is entitled to conduct [its] investigation out of the public eye and with the full cooperation of witnesses who have no fear their role in the investigation will lightly be disclosed.” *In re Grand Jury Subpoena, Judith Miller*, 438 F.3d 1138, 1141 (D.C. Cir. 2006). “[T]he Clerk’s Office cannot simply press ‘print’ and unseal docket information that might jeopardize personal privacy or ongoing investigations.” *In re Leopold*, 964 F.3d 1121, 1133 (D.C. Cir. 2020). [redacted]

Courts outside D.C. routinely keep search warrant records sealed at this phase because of “the compelling government interests in maintaining the confidentiality of search warrant applications while an investigation is pending.” *Leeper*, 187 F.4th at 25. [redacted]s

[redacted] This Court thus should hold that the "tradition of secrecy surrounding search warrant applications[,] … the sensitive nature of the information contained in the global affidavit, the procedural posture of the" United States' investigation, and publication to any "target of said investigation, collectively and significantly diminish the common-law right of access to judicial records." *Id.*

**6. The purposes for which the judicial records were introduced favors disclosure.**

The United States agrees that because the Affidavit and supporting materials were introduced *ex parte* [redacted] this factor weighs in favor of disclosure.

* * * *

"[T]he *Hubbard* analysis in this case is mixed": the first and sixth factors weigh in favor of disclosure, while the second, third, fourth, and fifth weigh strongly in favor of nondisclosure. *In re Press Application*, 704 F. Supp. 3d at 173. The lack of public knowledge of the investigation's details and the significant privacy interests weigh against disclosure, but the greatest consideration is an "undeniable need to protect an ongoing criminal investigation." *Id.* That fifth factor decisively

"tips the balance toward the" United States' "request to continue sealing." *Id.* The United States agrees that soon the time will come "when press access becomes appropriate, but at present the Application is a premature bid for sensitive information pertaining to an active investigation." *Id.*

**IV. Applicants cite no authority supporting the broad and immediate relief they request.**

Applicants cite many cases stressing the need for public access to judicial records. But sweeping assertions about open records being a "cornerstone of our judicial system" do little to resolve this case, especially given its particular posture. NYT Br. at 9. Rather than cite cases with similar circumstances—unsealing a search warrant mid-execution and mid-investigation—Applicants cherry-pick the best-sounding language from inapposite cases, none of which arose in the context presented here. Just about every case suffers from one of three problems, each of which spotlights the stark reality that the Applicants' request is both unprecedented and improper:

*First*, many of the Applicants' cases *support* sealing because of the public's strong interest in guarding the integrity of criminal investigations and protecting targets' and witnesses' privacy. *See Nixon*, 435 U.S. at 608-10 ("The First Amendment generally grants the press no right to information about a trial superior to that of the general public."); *CNN v. FBI*, 984 F.3d 114, 119-20 (D.C. Cir. 2021) (encouraging sealing where, as here, "secrecy plays an outsized role in the specific context"); *CREW*, 746 F.3d at 1098 (holding FOIA does not require release of documents during an "ongoing criminal investigation"); *In re Bos. Herald, Inc.*, 321 F.3d 174, 183 (1st Cir. 2003) ("Courts have also rejected claims based on First Amendment rights of access to ... affidavits supporting search warrants."); *Baltimore Sun Co.*, 886 F.2d at 64-65 ("[T]he need for sealing affidavits may remain after execution and in some instances even after indictment."); *Times Mirror*, 873 F.2d at 1211 ("[M]embers of the public have no right of access to search warrant materials while a pre-indictment investigation is under way."); *WP Co*, 201 F. Supp. 3d at 122-28 (maintaining "full closure of the sealed warrant materials"); *In re Motion to Intervene & Unseal*

*Search Warrant Recs.*, No. 25-mc-00539, 2025 WL 2637470, at *2 (D. Md. Sept. 12, 2025) ("An ongoing, pre-indictment criminal investigation has been found to be a compelling interest sufficient to maintain search warrant records under seal."); *cf. In re Reps. Comm. for Freedom of the Press*, 773 F.2d 1325, 1334-36 (D.C. Cir. 1985) ("[T]here is no right of public access to prejudgment records in civil cases."). As this Court put it, "the Government[]" has a "compelling interest in conducting its investigation in secret." *In re Press Application*, 704 F. Supp. 3d at 173.

[redacted]

*Second*, other cases arose in the civil context, where unsealing does compromise an ongoing criminal investigation and thus handicap a "core government function" in the same way unsealing does in a criminal case. *In re Sealed Case*, 77 F.4th at 830 (citation omitted); *see Metlife, Inc. v. Fin. Stability Oversight Council*, 865 F.3d 661, 663-64 (D.C. Cir. 2017); *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110 (2d Cir. 2006); *Nation Mag. v. U.S. Customs Serv.*, 71 F.3d 885, 887 (D.C. Cir. 1995); *Hyatt v. Lee*, 251 F. Supp. 3d 181 (D.D.C. 2017); *U.S. ex rel. Permison v. Superlative Techs., Inc.*, 492 F. Supp. 2d 561, 562 (E.D. Va. 2007).

*Third*, the criminal cases the Applicants rely on permit unsealing only *after* an indictment has issued—and most of the time, *long* after. And many cases were about historically public documents like trial transcripts or plea agreements, not warrant applications, which have "always" been "out of the public's view." *In re Press Application*, 704 F. Supp. 3d at 174 (citation modified). Again, the investigation-integrity and privacy risks of unsealing may diminish as a case proceeds to trial. But "the need for secrecy remains heightened even after an indictment has been issued, as long as the investigation is ongoing." *Id.* at 172; *see Press-Enterprise II*, 478 U.S. at 12 (unsealing transcript for post-complaint state-court preliminary hearing that was "like a trial"); *Press-Enter. Co. v. Superior Ct. of Cal.*, 464 U.S. 501, 511 (1984) (unsealing voir dire transcripts after the jury

was empaneled); *Globe Newspaper Co. v. Superior Ct. for Norfolk Cnty.*, 457 U.S. 596, 602 (1982) (holding unconstitutional a state law mandating courtroom closure during the testimony of minor sex-crime victims); *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 573, 580-81 (1980) (plurality op.) (holding a trial cannot be closed to public without "overriding interest"); *In re Leopold*, 964 F.3d at 1133 (allowing unsealing of "electronic surveillance orders" with redactions in closed cases after applicants "acknowledged that the government and court must be able to redact documents in order to protect privacy and law enforcement interests"); *United States v. Bus. of Custer Battlefield Museum & Store*, 658 F.3d 1188, 1190 (9th Cir. 2011) (unsealing "search warrant applications after an investigation has been terminated"); *In re McClatchy Newspapers, Inc.*, 288 F.3d 369, 372 (9th Cir. 2002) (unsealing proffer letters post-sentencing); *Washington Post v. Robinson*, 935 F.2d 282, 283 (D.C. Cir. 1991) (unsealing plea agreement post-plea); *Application of Newsday*, 895 F.2d at 75 (unsealing search warrant application, with redactions, post-plea); *Globe Newspaper Co. v. Pokaski*, 868 F.2d 497, 499-502 (1st Cir. 1989) (unsealing court records in closed cases); *L.A. Times*, 628 F. Supp. 3d at 59 (unsealing search warrant materials, with redactions, post-investigation); Order, *In re Search of 5807 Hillburne Way*, No. 8:21-mj-1202-GLS (D. Md. Sept. 22, 2026), ECF Nos. 16, 24 (similar); *United States v. Loughner*, 769 F. Supp. 2d 1188, 1192 (D. Ariz. 2011) (unsealing search-warrant documents "post-investigation and post-indictment"); *In re Search Warrants Executed on Apr. 28, 2021*, No. 21-mc-425, 2026 WL 3026012, at *1 (S.D.N.Y. Oct. 8, 2026) (similar); *In re Special Proc.*, 842 F. Supp. 2d 232, 235 (D.D.C. 2012) (unsealing a report into prosecutorial misconduct after a jury verdict was vacated); *In re Search Warrants Issued on May 21, 1987*, No. 87-186, 1990 WL 113874, at *1 (D.D.C. July 26, 1990) (ordering delayed "release of a portion of the sealed" search warrant affidavits after the trial "has recently concluded" "in order to afford the parties an

opportunity to seek a stay" of the order from the D.C. Circuit); *Matter of the Application of WP Co. LLC*, 2016 WL 1604976, at *1 (D.D.C. Apr. 1, 2016) (unsealing search warrant materials in closed cases); *In re Search Warrant Dated Oct. 13, 2023*, No. 23-mc-389, 2023 WL 6938292, at *4-5 (S.D.N.Y. Oct. 20, 2023) (unsealing after defendant was arrested and charged). So long as this investigation is ongoing and no charging decision has been made, these cases cannot support unsealing here.

* * * *

In all their papers, the Applicants have not identified a single case in which a court unsealed a warrant-related document while the execution was still ongoing and during an investigation. Even the few courts which permitted pre-indictment unsealing did not require the United States to disclose records that might harm the ongoing investigation. When the press tried to unseal the warrant affidavit for the 2022 Mar-a-Lago raid, for example, the court stressed that the United States had a "compelling interest" in sealing "the sources and methods used by the Government in its ongoing investigation." *In re Sealed Search Warrant*, 622 F. Supp. 3d at 1263-65. And the court in *Sealed Search Warrants Issued June 4 & 5*, unsealed the "search warrants and returns," which the United States *agreed* to unseal, but not the "applications and affidavits in support of [those] search warrants," because "the interest in the integrity and security of [the ongoing] investigation outweigh[ed] the interest in immediate access to the documents." 2008 WL 5667021, at *1, 4-5. Plus, those out-of-circuit cases conflict with this Court's conclusion that "sealing [search-warrant] documents entirely is a justified and narrowly tailored course of action" during a live investigation. *In re Press Application*, 704 F. Supp. 3d at 175.

## V. Temporary sealing is the only appropriate remedy at this time.

The Applicants argue against complete sealing, saying that "narrow redactions are the appropriate remedy." NYT Br. at 13. But "redactions are no silver bullet" here. *In re Press*

*Application*, 704 F. Supp. 3d at 172. When "the media has already engaged in speculation about [the] identities of" people in sealed or redacted judicial records, the Court should "seal[] the documents as a whole." *Id.* The heightened "degree of media scrutiny" in a case like this means "the public will be able to easily determine the names and identities of the persons referenced in the requested documents, and that even limited redactions would invite conjecture and speculation about the involvement by the affected persons or others in the allegations discussed in the requested materials." *WP Co.*, 201 F. Supp. 3d at 128 (citation modified) (agreeing with these claims by the United States). And this goes for unnamed but related people, too. As the district court handling the Mar-a-Lago search unsealing request put it: the "public notoriety and controversy about this search" means "that even witnesses who are not expressly named in the Affidavit would be quickly and broadly identified over social media and other communication channels, which could lead to them being harassed and intimidated." *In re Press Application*, 704 F. Supp. 3d at 172 (quoting *In re Sealed Search Warrant*, 622 F. Supp. 3d at 1263). This is all doubly true because of "the pre-indictment status of the government's criminal investigation," which "tips the balance decisively in favor of the privacy interests and against disclosure of even the redacted versions of the [Search Warrant Records] *at this time*." *Certain Interested Individuals, John Does I-V*, 895 F.2d at 467. Because "redaction of the requested materials is insufficient to protect adequately the compelling privacy, reputational, and due process interests," the Court should continue the "full closure of the sealed warrant materials." *WP Co.*, 201 F. Supp. 3d at 128.

Full sealing is the only way to sufficiently protect the ongoing investigation, too. Even the smallest of facts—exposed to a highly motivated press and millions of prying eyes—could expose crucial facets of this complex investigation, perhaps in ways the United States hasn't even contemplated. In an investigation like this, there are bound to be subtle connections drawn from

seemingly inconsequential facts, especially with so many people paying attention. *See Exxon Corp. v. FTC*, 384 F. Supp. 755, 762 (D.D.C. 1974) (facts that "taken outside the context of the investigation" would mean nothing, carry fresh weight and meaning when people view them "in an investigatory file"). [redacted] Further, there is widespread speculation about where this investigation is headed. For those reasons, redacted Search Warrant Records would inevitably answer at least some of those questions and "reveal important tactical choices made by the investigating agency and thereby harm an investigation." *Exxon Corp.*, 384 F. Supp. at 762. The Court should keep the records sealed.

[redacted]

[redacted]

[redacted]

[redacted]

**VI. The United States does not necessarily oppose later unsealing (with redactions).**

The Search Warrant Records need not remain sealed indefinitely. The United States trusts that, with the Court's help, the warrant will be fully executed soon, and it anticipates that a public

charging decision will follow. The United States does not necessarily oppose unsealing the Search Warrant Records (with appropriate redactions) after that, using the same process and limitations this Court ordered in President Trump's case. There, a few weeks after a four-count indictment of President Trump was made public, all but four of the same Applicants here asked this Court to unseal documents associated with an earlier-obtained search warrant for records linked to President Trump's Twitter account within that investigation. *In re Press Application*, 704 F. Supp. 3d at 165-66. After the indictment's release but before that application was filed, "much of the docket" "comprising the warrant proceedings had already been unsealed," including "briefing, orders, and opinions" that were either unredacted or "contained minor redactions." *Id.* at 166-67.

"That first wave of unsealing did not satisfy the" Applicants, so they sought access to the rest of the proceedings, including "all warrant application materials," "sealing-related motions and orders," "the search-warrant docket sheet," and "any other judicial records as to which there is no longer a compelling need for secrecy." *Id.* at 167 (citation modified). "[T]he Government agreed to further unsealing," "which prompted the Court to enter an Order making public the docket sheet and most of the entries thereon." *Id.* Left sealed were "1) the Warrant Application; 2) the Warrant Application's lengthy supporting Affidavit; 3) the Warrant that issued, which is nearly identical to the Application; 4) the [Non-disclosure order (NDO)] Application; and 5) the Government's *Ex Parte* Opposition—along with its exhibits—to Twitter's motion to vacate the NDO and stay the warrant." *Id.* After an *ex parte* hearing with the United States to discuss these requests, the Court ordered that several documents that contained very little sensitive information or were already public (some in redacted form) be released in part": "the Warrant Application, the issued Warrant, the NDO Application, the Government's *Ex Parte* Opposition, and several exhibits thereto." *Id.* The Court denied the request to unseal the warrant "Affidavit, several exhibits to the *Ex Parte*

Opposition, and redacted pages of various partially unsealed documents." *Id.* When the time comes, the Court should use the same process here. Through an *ex parte* hearing, the United States and the Court can sort through the categories of documents, determine which redactions are appropriate, and then unseal with those redactions all but the same sort of documents the Court declined to unseal in the 2023 case. But until then, it should all remain sealed.

## CONCLUSION

The Court should deny the Applications without prejudice and order the Department to file a status report about the execution of the search warrant within 30 days of the warrant's completed execution. If, however, the Court believes unsealing is appropriate at this time, the United States respectfully requests it state its reasons in an order and set a future unsealing date and time that gives the United States enough time to both file, and the Court to resolve, an emergency motion to stay that order pending appeal, if authorized by the Solicitor General, and potentially a similar motion with the D.C. Circuit. D.C. Cir. Rule 8(a)(1)(A).

Dated: October 27, 2026

JEANINE FERRIS PIRRO
United States Attorney

*s/ Peter Pfaffenroth*
PETER PFAFFENROTH
Chief, Civil Division
D.C. Bar No. 496637
United States Attorney's Office
601 D Street, N.W.
Washington, D.C. 20530
Telephone: 202-252-2513
Email: peter.pfaffenroth@usdoj.gov

*s/Alessandra P. Serano*
ALESSANDRA P. SERANO
Associate Deputy Attorney General
U.S. Department of Justice
Email: Alessandra.serano2@usdoj.gov